**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 27, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ALMA ROSE ROJO,

        Plaintiff-Appellant,

v.

IBP, INC.,

        Defendant-Appellee.

No. 07-3089
(D.C. No. 02-CV-4112-JAR)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

Plaintiff Alma Rose Rojo sued her former employer, IBP, Inc., alleging a

claim of workers' compensation retaliatory discharge under Kansas law. IBP

filed a counterclaim, alleging that Ms. Rojo's claim was barred by a prior

settlement. The district court agreed and granted summary judgment to IBP based

on the prior settlement. In a prior appeal, we determined that the district court

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

erred in this regard. *See Rojo v. IBP, Inc.*, No. 03-3300, 2005 WL 2697253 (10th Cir. Oct. 21, 2005) (unpublished). On remand, the district court again granted summary judgment in favor of IBP, reasoning that although Ms. Rojo had established a prima facie case of retaliation, she failed to show that IBP's proffered reasons for her termination were a pretext for retaliation. Ms. Rojo appeals, and we affirm.

### Summary of the Evidence

The district court thoroughly reviewed the evidence; we briefly summarize it here. Ms. Rojo began working for IBP on August 7, 1989. She contends that IBP fired her on July 14, 2000, in retaliation for exercising her rights under the Kansas Workers' Compensation Act by filing a workers' compensation claim after she injured her thumb at work on March 23, 2000.

Ms. Rojo alleges that IBP retaliated against her after her injury in March 2000 by not giving her vacation time for the period she requested. Her supervisor, Patsy Soto, explained that Ms. Rojo's request was denied because her vacation time did not accrue until her anniversary date in August, but she asked for time off in June. Nevertheless, she was allowed a leave of absence in June 2000 so she could be on vacation at the same time as her husband, who also worked for IBP.

Ms. Rojo also alleges that IBP retaliated against her after her injury in March 2000 by harassing her at work. When she was released for regular work on March 30, she was not assigned to her regular job, but was assigned instead to the "picking belts," conveyor belts that carry product to a storage bin. She argues that IBP's timing in assigning her to the picking belts is circumstantial evidence of retaliation because that job, in her view, was tougher than her regular job, and Ms. Soto was "standing right there" and expected her "to get everything out of that belt, everything." Aplt. App., Vol. 1, at 137 (Rojo Depo. at 98:6-11). Ms. Rojo admitted in her deposition, however, that she was uncertain whether her assignment to the picking belts "had anything to do with [her] workers' compensation claim[.]" *Id.* at 136 (Rojo Depo. at 95:9-11). She said: "Maybe it did, maybe it didn't. I don't know." *Id.* (Rojo Depo. at 95:20-21).

Ms. Rojo contends that Ms. Soto made a practice of mistreating injured employees who had filed workers' compensation claims. On July 14, 2000 (Ms. Rojo's last day of work), Ms. Soto pulled Ms. Rojo off the line and wrote her up for not removing items that should have been removed from the conveyor belt. Ms. Rojo responded that the removal of some of those items should have been the responsibility of *other* employees. Ms. Soto took Ms. Rojo to talk to the personnel manager, Doug Bolton. Ms. Soto said that Ms. Rojo was very angry, but Ms. Rojo denies that she cursed, as claimed by Mr. Bolton. He told Ms. Rojo to go home—she thought she was just being sent home for the rest of the day to

cool off.  Mr. Bolton said that she was suspended for insubordination, but not fired.  Before leaving the plant, Ms. Rojo requested information about her retirement benefits and filled out a form requesting them.  She also turned in her equipment.

Ms. Rojo testified that when she attempted to go back to work the next day, July 15, Mr. Bolton told her to leave or he would call security.  Mr. Bolton testified that she returned on July 17, saying that she wanted to return to work so she could earn vacation pay which would accrue on August 7, 2000.  Mr. Bolton kept her on the payroll until August 8 for this reason, but she did not return to work.

Ms. Rojo admitted in her deposition that she filed this lawsuit because she was disappointed with the settlement she received from her workers' compensation claim, and she wanted to get more money to pay medical and legal bills.  *Id.* at 154-55 (Rojo Depo. at 166:15-170:21).

### District Court's Order

At the outset, the district court noted that Ms. Rojo did not offer additional material facts in separately numbered paragraphs to controvert IBP's facts, as required by the district court's local rules.  *Id.*, Vol. 2, at 314.  The court described her pleadings as "disjointed narrative."  *Id.*  After its own extensive review of the evidence, the court concluded that there were "shortcomings in the

quality of [Ms. Rojo's] proof and arguments that suggest sufficient doubt about [her] ability to prove a prima facie case with respect to both termination and causation." *Id.* at 329-30. But because her burden to establish a prima facie case was not "onerous[,]" *id.* at 330 (quotation omitted), the court assumed for the purposes of IBP's summary judgment motion that she was terminated, concluded that she had "established a prima facie case of retaliatory discharge," and moved on to the question of whether she had shown that IBP's proffered reasons for its actions were a pretext for retaliation, *see id.* The court then concluded that there was "simply no evidence before the Court suggesting that IBP suspended or terminated plaintiff because she filed a worker's compensation claim." *Id.* at 332. The court noted that the four-month gap between Ms. Rojo's injury and her termination did not support her argument that there was a causal connection between them. *See id.* The court concluded that Ms. Rojo had "not met her burden to show a triable issue of fact as to whether defendant's actions were pretextual[,]" and granted summary judgment to IBP. *Id.* at 333.

## Discussion

"We review the grant of a summary judgment motion de novo." *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1222 (10th Cir. 2008). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

-5-

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "We view all evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Fye*, 516 F.3d at 1223. The district court set out the "burden-shifting analysis" applicable to a claim of workers' compensation retaliatory discharge under Kansas law, *see* Aplt. App., Vol. 2, at 325-26 (quotation omitted), and we need not repeat that discussion here.

Ms. Rojo contends that there are issues of material fact regarding pretext. She argues that she is not required to provide *direct* evidence of retaliation or "clear and convincing evidence" at the summary judgment stage. Aplt. Reply Br. at 3. She relies on circumstantial evidence—the chronology of events following her workers' compensation claim (oppressive supervision, harassment, and write-up on July 14, 2000), and evidence showing that the reasons given by IBP for her termination evolved over time.

Contrary to Ms. Rojo's assertion, the district court applied the correct legal standard for assessing a claim of retaliatory discharge under Kansas law. *See* Aplt. App., Vol. 2, at 331-32. The court correctly stated that Ms. Rojo had "the burden of proving her claim by a preponderance of the evidence that is clear and convincing in nature." *Id.* at 325 (quotation omitted). The court acknowledged that "retaliatory discharge cases typically rely on circumstantial evidence, not direct evidence, to prove the employer's unlawful intent[.]" *Id.* And the court

left no doubt that it was the quality, not the quantity, of Ms. Rojo's proof that must be clear and convincing. *Id.* at 331.

Under this legal standard, we reach the same conclusion as the district court: Ms. Rojo has offered little in the way of evidence. Rather, she offers much speculation regarding the reason for her discharge. *See id.* at 332. Her repeated references to other retaliatory discharge cases where IBP was found to have retaliated against other employees are not relevant to this case and whether IBP retaliated against Ms. Rojo. We have carefully reviewed the record and conclude that the district court's conclusions are both factually and legally supported.

The district court's judgment is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge